UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ITT EDUCATIONAL SERVICES, INC., | ) | Case No. 16-07207-JMC-7A |
| | ) | |
| Debtor. | ) | |

**TRUSTEE'S OBJECTION TO MOTION OF COMMONWEALTH OF MASSACHUSETTS AND STATE OF NEW MEXICO FOR DETERMINATION THAT THE AUTOMATIC STAY PROVISION DOES NOT APPLY TO THE STATES' ACTIONS AGAINST THE DEBTOR**

Deborah J. Caruso, the chapter 7 trustee in this case (the "Trustee"), files this objection (the "Objection") to the *Motion of Commonwealth of Massachusetts and State of New Mexico for Determination that the Automatic Stay Provision Does Not Apply to the States' Actions Against the Debtor* [ECF No. 72] (the "Motion"). In support of this Objection, the Trustee respectfully states as follows:

**Preliminary Statement**

1. By any reasonable metric, the facts and circumstances at issue here are unique and warrant denying the Motion at this time. This is a massive, free-fall, chapter 7 case and is the largest chapter 7 case of any for-profit educational institution. Prior to the Petition Date (as defined below) ITT Educational Services, Inc. ("ITT"), ESI Service Corp. ("ESI") and Daniel Webster College, Inc. ("Webster College," and together with ITT and ESI, the "Debtors") had nearly 40,000 students and over 8,000 employees, and operated in nearly 140 locations in almost 40 states. However, due to adverse decisions by certain regulators and a cash sweep by the

Debtors' prepetition secured lender, the Debtors experienced a precipitous liquidity crunch that resulted in the cessation of virtually all operations[1] and the filing of these chapter 7 cases.

2. Unlike other for-profit education bankruptcy cases, in this case there is no debtor in possession – the Trustee was appointed to oversee the estates of the Debtors. In furtherance of her duties, the Trustee has begun the important task of marshalling, protecting, and preserving the assets of the estates. The Trustee's task is a Herculean one – the Trustee anticipates the Debtors have nearly 200,000 creditors, including the approximately 40,000 students who were enrolled in the Debtors' academic programs on the Petition Date. Some creditors are represented by counsel, but the Trustee believes that the vast majority of creditors are not.

3. The ability for the Trustee to marshall and preserve estate assets is especially important in these cases as, notwithstanding the chapter 7 nature, the Trustee anticipates there may be a meaningful recovery for unsecured creditors. However, the assets and property of the estates (collectively, the "Estate Property") are widespread, located throughout the nearly 140 locations where the Debtors operated. The Estate Property consists primarily of real estate holdings and accounts receivable, as well as hundreds of thousands of documents, including student records (including student transcripts, financial aid information, medical records, and other documents, some of which may contain sensitive personally identifiable information). And with only 5 employees of ITT remaining as of the Petition Date, much is being asked of too few people.

4. On top of the above challenges, the Debtors were parties to multiple litigation claims and investigations brought by various state attorneys general and federal regulators that

[1] Webster College entered into a "teach out" agreement with Southern New Hampshire University ("SNHU"), whereby SNHU has agreed to take on all Webster College students and programs for the length of the agreement, which is currently set to expire in 2017.

were commenced prior to the Petition Date. The movants (who represent only a fraction of the affected creditors) seek a determination from this Court that the automatic stay imposed by section 362 of title 11 of the United States Code (the "Bankruptcy Code") can be disregarded through application of the police power exception of section 362(b)(4) of the Bankruptcy Code. Yet if there ever was a case that exemplified the fundamental need for the automatic stay in order to assess, marshall, and preserve sensitive estate assets, this is it.

5. Although each action subject to the Motion includes a request for injunctive relief to stop ITT from violating state consumer protection law, the need for such injunctive relief is negated by ITT's cessation of business. There is no continuing misconduct to enjoin (if there ever was), and no continuing business operation to police. The threat of current or future harm simply does not exist and will not come to exist in the future. Given ITT's shutdown, no further "regulatory activity" relating to ITT is necessary or required on an immediate basis and no injunction against the Debtors is necessary. The only causes of action that remain in the actions are combinations of various counts under state common law, restitution, disgorgement, and civil penalties, *i.e.*, monetary relief. Yet the police power exception does not apply where a regulator is acting to further a pecuniary interest, which is exactly the situation in these cases.

6. These actions also affect Estate Property as they seek determinations regarding the validity and enforceability of various loan documents, or the disgorgement of tuition money that may have been collected and spent by the Debtors prepetition. In furtherance of these actions, the regulators want to continue with discovery and potentially compel compliance with outstanding, prepetition investigative demands – including potential demands for sensitive student records (including financial information) and other documents that the Trustee is in the process of preserving. Congress did not intend for the police power exception to interfere with a

trustee's ability to marshall, assess, and preserve estate property, which would be the result if these actions (and actions like these) were allowed to continue.

7. Significantly, the Trustee is not ITT, ESI, or Webster College, but an independent fiduciary appointed to manage the Debtors' estates. She must be given a meaningful "breathing spell" to do her job. Responding to piecemeal litigation before the Trustee has had an opportunity to independently evaluate and investigate the estates' position is unnecessary, prejudicial to other creditors' recoveries, and simply inefficient. The Trustee will work with the regulators and other parties in interest to establish a reasonable timeline and protocol for access to necessary documents and information. But the process needs to be coordinated – not for the protection of the prepetition Debtors, but for the protection of the *postpetition estates* and *all creditors* as well as the *Trustee*.

8. For the reasons above, and as set forth more fully below, the Motion is premature and should be denied.

## Background

### A. The Debtors' Business and Events Leading to These Chapter 7 Cases.

9. On September 16, 2016 (the "Petition Date"), the Debtors each filed with the United States Bankruptcy Court for the Southern District of Indiana (the "Court") voluntary petitions for relief under chapter 7 of the Bankruptcy Code. A motion for the joint administration of the Debtors' cases is currently pending.

10. On the Petition Date, the Trustee was appointed as the chapter 7 trustee in each of the Debtors' cases pursuant to section 701(a)(1) of the Bankruptcy Code.

11. Debtor ITT is a publicly traded Delaware corporation. The Debtors were leading proprietary providers of postsecondary degree programs in the United States based on campus

locations, student enrollment, programs of study and other notable metrics. Through certain strategic acquisitions, the Debtors were able to deliver short-term information technology and business learning solutions for career advancers and other professionals through the Center for Professional Development ("CPD").

12. As of June 30, 2016, the Debtors offered (a) master, bachelor, and associate degree programs to approximately 40,000 students; and (b) short-term technology and business learning solutions to career advancers and other professionals through CPD.

13. As of June 30, 2016, the Debtors had 137 campus locations in 39 states. In addition, the Debtors offered one or more of its online programs to students located in all 50 states and the District of Columbia. All of their campus locations were authorized by the applicable education authorities of the states in which they operate, and were accredited by an accrediting commission recognized by the U.S. Department of Education (the "DOE").

14. In August of 2016, the DOE prohibited ITT from enrolling new students using federal financial aid funds. Shortly thereafter, the Debtors' prepetition secured lender froze the Debtors' access to funding. The Debtors attempted to consensually resolve the dispute with their lender and the regulators, but were unsuccessful. Without access to cash, the Debtors faced a severe liquidity crisis. The Debtors announced on September 6, 2016, that they would permanently discontinue academic operations. On September 7, 2016, the Debtors' secured lender swept $16 million that remained in the Debtors' accounts. Without any immediate source of funding, the Debtors filed these chapter 7 cases.

15. Since her appointment, the Trustee and her professionals have worked tirelessly to stabilize the estates. The Debtors have assets located in at least 37 states, and books and records (including student records) located throughout the country, and complicated insurance,

employee, and tax obligations. The Trustee and her team of professionals are systematically assembling and analyzing the Debtors' records in an effort to locate the Debtors' assets and liabilities so that the Trustee can expeditiously carry out her duties.

16. This process is already underway. As reported to the Court at the status conference on September 28, 2016, the Trustee has already retained a real estate broker that is in the process of assessing the Debtors' real property and leases. The Trustee has also retained an experienced liquidator that will access all of the Debtors' leased locations, remove all equipment, furniture, and fixtures to a secure location, and then proceed to liquidate such items.

17. The Trustee is also in the process of recovering all of the Debtors' computer servers and preserving and recovering all of the Debtors' documents, including student transcripts, financial aid information, medical records, and other documents, some of which may contain sensitive personally identifiable information. The Trustee is also in the process of selecting a database vendor to image and catalogue the documents. As reported to the Court, Parchment, Inc. ("Parchment") has been retained to image all student transcripts and will provide access to students upon request at Parchment's website within 7-10 days of receiving such documents from the Trustee. Further, the Trustee intends to establish a database, accessible to all parties in interest, which will be searchable, and will be centralized depository for all of the Debtors' documents.

18. Much progress has been made, but the foregoing represents only a fraction of the tasks and issues that the Trustee faces.

**B. The Pending State Actions.**

19. On February 26, 2014, the State of New Mexico filed a complaint against ITT, styled *State of New Mexico v. ITT Educational Services, Inc.*, D-202-CV-2014-01604 (the "New

Mexico Action").[2] The New Mexico Action seeks injunctive relief, restitution, disgorgement, and civil penalties under New Mexico common law, the New Mexico Post-Secondary Education Institutional Act, and the New Mexico Unfair Practices Act. On December 8, 2015, the court overseeing the New Mexico Action denied ITT's motion to dismiss the New Mexico Action, which decision is currently on appeal. The New Mexico Action is currently in the discovery phase.

20. On March 31, 2016, the Commonwealth of Massachusetts (together with the State of New Mexico, the "State Actors") filed a complaint against ITT, styled *Commonwealth of Massachusetts v. ITT Educational Services, Inc.*, Sup. Ct. 16-04111 (the "Massachusetts Action" and, together with the New Mexico Action, the "State Actions").[3] The Massachusetts Action seeks injunctive relief, restitution, and civil penalties under the Massachusetts Consumer Protection Act. ITT filed a motion to dismiss the Massachusetts Action on July 22, 2016, and the matter is fully briefed.

---

[2] The New Mexico Action seeks:

a. Declaratory relief that ITT's arbitration agreement is unconscionable;
b. Preliminary and permanent injunctive relief prohibiting ITT from enforcing/entering into agreements with consumers, or engaging in conduct that violates New Mexico's Unfair Practices Act or other law;
c. Disgorgement under an unjust enrichment theory;
d. Civil penalties of $5,000/violation under the Unfair Practices Act;
e. Restitution under the Unfair Practices Act; and
f. Civil penalties of $500/day/violation under New Mexico Post-Secondary Educational Institution Act.

[3] The Massachusetts Action seeks:

a. Injunctive relief prohibiting ITT from:
   i. Making false/misleading representations regarding, or failing to disclose material information regarding, job placement rates, earnings/opportunities available to students/graduates, nature of its educational programs, and financial aid, and
   ii. Steering private loans to student borrowers;
b. Restitution to all current and former Computer Network Systems program students (including tuition); and
c. Civil penalties of $5,000/violation.

## Objection

**A. The Automatic Stay Affords the Trustee Temporary Relief From Creditor Actions to Prevent the Dissipation of the Debtors' Assets.**

21. The automatic stay is "one of the fundamental protections afforded to debtors by the bankruptcy laws." *Reedsburg Util. Comm'n v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d 786, 790 (7th Cir. 2011). Further, section 105 of the Bankruptcy Code allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of title 11. 11 U.S.C. § 105(a).

22. Specifically, section 362(a) of the Bankruptcy Code protects estate assets by automatically staying any (a) "action or proceeding against the debtor that was or could have been commenced before the commencement of the case"; (b) "act … to exercise control over property of the estate"; or (c) "act to collect, asses, or recover a claim" that arose prior to the petition date. 11 U.S.C. §§ 362(a)(1), (3), (6).

23. "The general policy behind [11 U.S.C. § 362(a)] is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected." *Penn Terra Ltd. v. Department of Envtl. Resources*, 733 F.2d 267, 271 (3d Cir.1984); *see also In re Stulley*, 108 B.R. 174 (Bankr. S.D. Ohio 1989) (the automatic stay "enables the debtor to avoid the multiplicity of claims arising against the estate arising in different forums."). The automatic stay "provides one of the most fundamental protections afforded to debtors by preventing the piecemeal destruction of the debtor's property." *In re Kmart Corp.*, 285 B.R. 679, 688 (Bankr. N.D. Ill. 2002).

24. The automatic stay also protects creditors by preventing a race to the courthouse that would otherwise destroy value and jeopardize recoveries for the creditor body as a whole. *See Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987) ("The purpose of the automatic stay

provided by 11 U.S.C. § 362 is to protect the debtor and his creditors"); *Reliant Energy Services, Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) ("The purposes of the bankruptcy stay under 11 U.S.C. § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse.'") (*quoting GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)).

**B. The Police Power Exception is Narrowly Construed.**

25. Section 362(b) of the Bankruptcy Code sets forth certain limited exceptions to the automatic stay. Section 362(b)(4) of the Bankruptcy Code provides that the filing of a bankruptcy petition does not operate as a stay against "the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's … police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C. § 362(b)(4).

26. Significantly, there is no existing judgment here to enforce.

27. Courts within this circuit and elsewhere apply a two prong test to determine whether a governmental unit's action falls within the police power exception of section 362(b)(4) of the Bankruptcy Code: the "pecuniary test" and the "public policy" test. *In re Sori*, 513 B.R. 728, 734 (Bankr. N.D. Ill. 2014); *In re Edison Mission Energy*, 502 B.R. 830, 835 (Bankr. N.D. Ill. 2013). The pecuniary test focuses on whether a governmental proceeding "relates to public safety and welfare, which favors application of the stay exception, or to the government's interest in the debtor's property, which does not." *Edison Mission Energy*, 502 B.R. at 835 (*citing In re Phillips*, 368 B.R. 733, 739 (Bankr. N.D. Ind. 2007)). The public policy test focuses

on whether the action seeks to effectuate public policy or merely is being brought to adjudicate private rights. *In re Sori*, 513 B.R. at 734; *see also In re Go West Entertainment, Inc.*, 387 B.R. 435, 439 (Bankr. S.D.N.Y. 2008) ("[p]roceedings that only advance governmental fiscal interests or adjudicate private rights" do not trigger the police power exception).

28. Courts recognize that state regulatory laws generally have a dual purpose that protects the public welfare and advances a state's pecuniary interest. "In order to meet the section 362(b)(4) exception to the automatic stay, when a law has multiple purposes, the Court must find that the action is brought primarily to enforce the law's protection of the public safety or health of the citizens of [the State] and not primarily to protect the State's pecuniary interest." *Enron Corp. v. California ex rel. Lockyer (In re Enron Corp.)*, 314 B.R. 524, 536 (Bankr. S.D.N.Y. 2004).

29. The police power exception is narrowly construed in this Circuit. *Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542, 555 (7th Cir. 1985) ("[T]his exception has been narrowly construed to apply to the enforcement of state laws affecting health, welfare, morals and safety, but not to 'regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court'") (citation omitted); *Edison Mission Energy*, 502 B.R. at 835 n.6 ("The legislative history of Section 362(b)(4) indicates that the exception is "intended to be given narrow construction in order to permit governmental units to pursue actions to protect health and safety"); *see also Enron*, 314 B.R. at 534 (Congress intended to give the exception a narrow construction); *In re First Alliance Mortg. Co.*, 263 B.R. 99 (B.A.P. 9th Cir. 2001) ("[n]ot every police or regulatory action is automatically exempt … regulatory laws that directly conflict with the control of the res or property by the bankruptcy court will be stayed.") Indeed, the Court of Appeals for the Seventh Circuit recently ruled in favor of an expanded view of the automatic stay

61893966v6

where necessary and appropriate to protect the interests of the bankruptcy estates. *See Caesars Entm't Operating Co. v. BOKF, N.A. (In re Caesars Entm't Operating Co.)*, 808 F.3d 1186 (7th Cir. 2015).

**C. The State Actions Do Not Qualify for the Police Power Exception Because There is no Public Safety Need as the Debtors Have Ceased Operations and the State Actors are Acting as Creditors Advancing Their Own Pecuniary Interests.**

30. The police power exception does not apply in the instant case because there is no continuing threat to public safety as the Debtors have ceased all operations, have virtually no remaining employees, and are liquidating their assets. Case law is clear that where a debtor has voluntarily ceased business activities the subject of government action, the police power exception does not apply. *See, e.g., In re Enron*, 314 B.R. 524 (lawsuit seeking injunction, restitution, and civil penalties did not fall under police power exception where debtor was liquidating and no prospect to continue operations existed); *U.S. v. Wellham (In re Wellham)*, 53 B.R. 195, 198 (Bankr. M.D. Tenn. 1985) (automatic stay applied because government action was for money damages for past conduct that had ceased and did not purport to stop any continuing misconduct by the debtor). The *Enron* case is instructive. In *Enron*, the State of California brought a lawsuit against the debtor seeking injunctive relief, disgorgement of profits, civil penalties, and money damages on account of the debtor's trading activities in the California energy markets. 314 B.R. at 531. The debtor sought to enjoin the lawsuit as a violation of the automatic stay and the state argued the lawsuit was exempt under section 362(b)(4) of the Bankruptcy Code. The bankruptcy court held the lawsuit was subject to the automatic stay as the police power exception did not apply.

31. The bankruptcy court determined the state failed to satisfy the pecuniary test because the state was not acting as a regulator protecting public safety or welfare because its request for an injunction was "meaningless" as "the need for an injunction to prevent

participation in the California markets has been eviscerated" due to the debtor's cessation of business. *Id*. at 537. The bankruptcy court further explained that the claims for restitution, disgorgement, civil penalties, and money damages also did not relate to public safety or welfare because where "the primary purpose of a government lawsuit is to seek money damages or other monetary relief for past conduct, and not to prevent future conduct that could harm the public health or safety, the courts hold that the police power exception to the automatic stay does not apply." *Id*. at 538. The bankruptcy court further held that the public policy test was not satisfied because without any public safety concerns, the state was acting "merely... as a creditor or an entity in a private class action" and was not entitled to the police power exception. *Id*. at 540-41.

32. The instant facts warrant denial of the Motion as the State Actions do not fall within the police power exception. The Debtors have ceased all operations and have virtually no remaining employees. As such, any injunctive relief sought in the State Actions purporting to protect the public interest is simply rendered moot as there is no prospect for the Debtors to re-engage in business. The only reason to continue the State Actions is to further the State Actors' pecuniary interests through seeking damages or disgorgement for past conduct. By failing to remedy a current public welfare threat and acting for pecuniary gain, the State Actions are outside of the scope of the police power exception and remain subject to the automatic stay.

33. Moreover, the continuation of the State Actions will adversely affect Estate Property and thus imperil the Trustee's efforts. The Trustee is only beginning to evaluate the Debtors' student records and financial statements, including accounts receivable, all of which must be protected in order to ensure the integrity of the estates. The State Actions seek determinations that can have an adverse impact on these receivables, all before the Trustee has had an opportunity to fully evaluate and develop the estate's position. Further, the New Mexico

Action is already in discovery. Complying with the discovery burdens in the action, as well as preparing for and attending status conferences and other pre-trial requirements, will unnecessarily impose on the Trustee's efforts to oversee the bankruptcy estates.

34. To be clear – no one is suggesting that the State Actors are not acting in the best interests of their constituents. But we must avoid a race to the courthouse and the satisfaction of one regulator's demands at the expense of other regulators, creditors, or students. Further, if the stay is lifted with respect to these (or any regulators), there could be seizure of assets, servers, books and records, and other materials that could significantly harm the Trustee's ability to fulfill her obligations pursuant to section 704 of the Bankruptcy Code.

35. The State Actors attempted to preempt the Trustee's argument by asserting that the police power exception "is not limited to actions against entities that continue to do business" and cite to *First Alliance* in support. (Motion at 7). The State Actors' reliance on *First Alliance* is misplaced. *First Alliance* did not involve a situation where a debtor ceased all business operations and was liquidating. Rather, the debtor had ceased its loan origination business on account of a preliminary injunction and filed for chapter 11 seeking to reorganize its business. *In re First Alliance*, 263 B.R. at 103. In fact, all but one[4] of the cases cited in support of the Motion involve actions against debtors who filed for chapter 11 or 13 protection, not a situation where the debtors were liquidating in chapter 7. As such, the regulators in those cases were able to demonstrate the police power exception applied because of actual ongoing public welfare concerns. In contrast, the Debtors have no hope of continuing in business as the Debtors have shut down. The State Actors have provided no support for their argument that the police power

[4] *Penn Terra* involved a chapter 7 case, but the issue was an ongoing environmental hazard that existed, and continued to exist, causing continued environmental harm even though the debtor had ceased business. *Penn Terra*, 733 F.2d at 270. Plus, the debtor in that case had agreed, *prepetition*, to correct the harm and had entered into a consent order prior to the petition date. In other word, the state already had a judgment – there was no dispute.

exception applies to consumer protection actions against a company that is liquidating under chapter 7.[5]

**D. Policy Considerations Mandate the State Actions Remain Subject to the Stay.**

36. Compelling policy considerations further support denying the Motion. Courts can consider policy considerations in analyzing whether an automatic stay exception is applicable. *See S.E.C. v. Brennan*, 230 F.3d 65, 74 (2nd Cir. 2000) ("[T]he policies behind § 362 as a whole weigh strongly in favor of applying the automatic stay in these circumstances."); *In re Enron*, 314 B.R. at 540 (analyzing policy considerations and determining that "this is not a case where a wrongdoer is trying to hide in Bankruptcy Court.").

37. The primary purpose for the police power exception is to prevent the bankruptcy courts from becoming a "haven for wrongdoers." *In re Berg*, 198 B.R. 557, 560 (9th Cir. BAP 1996). As explained by the First Circuit in *In re McMullen*, 386 F.3d 320 (1st Cir. 2004):

> This [police power] exception discourages debtors from submitting bankruptcy petitions either primarily or solely for the purpose of evading impending governmental efforts to invoke the governmental police powers to enjoin or deter ongoing debtor conduct which would seriously threaten the public safety and welfare.

*Id.* at 324-25.

38. No one is hiding in the bankruptcy court -- the Debtors had no access to cash, and filed these cases to ensure an orderly liquidation.

---

[5] The State Actors argue that the relief sought in the State Actions act to deter future violations, and that such deterrence exists regardless of whether the Debtors remain in operation. (Motion at 7-8.) At least one court from within the Seventh Circuit has rejected this argument and held the mere prospect of deterrence without stopping an ongoing public welfare concern is insufficient for the police power exception. *See In re Ellis*, 66 B.R. 821 (Bankr. N.D. Ill. 1986) ("At most, the Department might argue that its state suit served to stop or prevent welfare fraud by other recipients in the future. We do not think this is what Congress had in mind, though. Rather, Congress intended to except governmental actions to stop ongoing or continuing frauds or prevent them from happening in the first place.").

39. None of the policy concerns underlying section 362(b)(4) of the Bankruptcy Code are present. The burden of having to step in and defend litigation at this early and critical juncture of these cases is borne by the Trustee, not a debtor in possession. The Trustee was not the party that engaged in the prepetition actions giving rise to the State Actions,[6] nor does the Trustee possess institutional knowledge about the State Actions to be able to effectively participate in the litigation at this point, and to do so on an emergency basis would incur considerable expenses – expenses that will be borne by creditors of these estates. The Trustee has not even been appointed for two weeks as of the filing of this Objection, yet the State Actors want this Court to allow them to go forward with pending litigation that will require the Trustee, not the prepetition Debtors, to devote a significant amount of time and estate resources away from the administration of these estates while these cases are in their early days. Such a result runs afoul of the most fundamental protections afforded by the Bankruptcy Code and does nothing to further the interests that the police power exception is designed to protect.

40. Importantly, the Trustee wants to and intends to work with the multitude of governmental units, including the State Actors that may have interests and/or claims against the Debtors.[7] Given the sheer number of interested governmental parties, the Trustee intends to create a protocol to streamline the process of allowing interested parties to assert and resolve claims against the Debtors' estates, including requests for access to documents. Until such protocol is established, it is premature to allow certain actions to go forward merely because certain creditors and/or regulators got to the courthouse first. The Trustee anticipates filing in

---

[6] The Debtors did not seek bankruptcy protection to avoid their regulators. The Debtors sought chapter 7 relief due to the prepetition actions of their secured lender that resulted in a severe liquidity constraint. Without access to liquidity, the Debtors were forced to initiate these chapter 7 proceedings.

[7] The Trustee and her counsel have already engaged with the regulators regarding preservation and access to books and records, and will continue to do so.

the near future an action seeking to clarify that the automatic stay applies to any consumer protection or other similarly related regulatory action or, in the alternative, seeking an extension of the automatic stay against any and all such actions pursuant to section 105(a), 362, 541, and 704 of the Bankruptcy Code. Such a motion is clearly authorized by the Bankruptcy Code, and was even suggested as the proper method to stay an action that could otherwise continue under the police power exception in three of the cases cited by the State Actors. *See Eddleman*, 923 F.2d at 786 (citing legislative history for the notion that "The bankruptcy court has ample additional power to prevent damage to the bankrupt estate by such actions on a case-by-case basis"); *Penn Terra*, 733 F.2d at 273 ("The bankruptcy court, in its discretion, may issue an appropriate injunction, even if the automatic stay is not operative."); *First Alliance,* 263 B.R. at 103 ("The bankruptcy court has other avenues to prevent general harm to the estate, *i.e.*, its powers under § 105(a)."). The Trustee believes that such an order will ensure the breathing spell necessary for the Trustee to preserve assets (including books and records) and maximize value.

WHEREFORE, the Trustee respectfully requests that the Court deny the Motion and grant such other and further relief as it deems just and proper.

Respectfully submitted,

Proposed counsel to the Trustee
RUBIN & LEVIN, P.C.

By: */s/ John C. Hoard*
     John C. Hoard

Deborah J. Caruso (Atty. No. 4273-49)
John C. Hoard (Atty. No. 8024-49)
James E. Rossow Jr. (Atty. No. 21063-29)
Meredith R. Theisen (Atty. No. 28804-49)
RUBIN & LEVIN, P.C.
135 N. Pennsylvania Street, Suite 1400
Indianapolis, Indiana 46204
Tel: (317) 634-0300
Fax: (317) 263-9411
Email:  dcaruso@rubin-levin.net
        johnh@rubin-levin.net
        jim@rubin-levin.net
        mtheisen@rubin-levin.net

-AND-

Proposed counsel to the Trustee
Proskauer & Rose LLP

By: */s/ Jeff J. Marwil*
     Jeff J. Marwil

Jeff J. Marwil
PROSKAUER ROSE LLP
70 W. Madison St.
Chicago, IL 60602
Tel: (312) 962-3550
Fax: (312) 962-3551
Email:  jmarwil@proskauer.com
        johnh@rubin-levin.net
        jim@rubin-levin.net
        mtheisen@rubin-levin.net

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2016, a copy of the foregoing *Trustee's Objection to Motion of Commonwealth of Massachusetts and State of New Mexico for Determination that the Automatic Stay Provision Does Not Apply to the States' Actions Against the Debtor* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Scott S. Anders scott.anders@jordanramis.com, litparalegal@jordanramis.com
Kay Dee Baird kbaird@kdlegal.com, rhobdy@kdlegal.com;crbpgpleadings@kdlegal.com
Michael I. Baird baird.michael@pbgc.gov, efile@pbgc.gov
Ashley Flynn Bartram ashley.bartram@oag.texas.gov, elizabeth.martin@oag.texas.gov
Richard James Bernard rbernard@foley.com
Joan Ligocki Blackwell joan.blackwell@btlaw.com
Kayla D. Britton kayla.britton@faegrebd.com, cindy.wondra@faegrebd.com;sarah.herendeen@faegrebd.com
Deborah Caruso dcaruso@rubin-levin.net, dwright@rubin-levin.net;mcruser@rubin-levin.net
Deborah J. Caruso trusteecaruso@rubin-levin.net, DJC@trustesolutions.net;mcruser@rubin-levin.net
Joshua W. Casselman jcasselman@rubin-levin.net, angie@rubin-levin.net
Sonia A. Chae chaes@sec.gov
Michael Edward Collins mcollins@manierherod.com
David H DeCelles david.h.decelles@usdoj.gov
Dustin R. DeNeal dustin.deneal@faegrebd.com, cindy.wondra@faegrebd.com;sarah.herendeen@faegrebd.com
Abby Engen aengen@nmag.gov
Charles Anthony Ercole cercole@klehr.com
Andrew W Ferich awf@chimicles.com
Lydia Eve French lydia.french@state.ma.us
Julian Ari Hammond Jhammond@hammondlawpc.com, ppecherskaya@hammondlawpc.com
Adam Craig Harris adam.harris@srz.com
Rocio Herrera rocio@johnsonblumberg.com, bkecfnotices@johnsonblumberg.com
Michael W. Hile mhile@jacobsonhile.com, badams@jacobsonhile.com
John C. Hoard johnh@rubin-levin.net, marie@rubin-levin.net;atty_jch@trustesolutions.com
Jeffrey A Hokanson jhokanson@fbtlaw.com, tacton@fbtlaw.com;jhokanson@ecf.inforuptcy.com
Jeffrey L Hunter jeff.hunter@usdoj.gov, USAINS.ECFBankruptcy@usdoj.gov;denise.woody@usdoj.gov;kristie.baker@usdoj.gov
James C Jacobsen jjacobsen@nmag.gov, eheltman@nmag.gov
Christine K. Jacobson cjacobson@jacobsonhile.com, cjacobson@ecf.inforuptcy.com;badams@jacobsonhile.com
Jay Jaffe jay.jaffe@faegrebd.com, sarah.herendeen@faegrebd.com
Benjamin F Johns bfj@chimicles.com, klw@chimicles.com

Anthony R. Jost     tjost@rbelaw.com, baldous@rbelaw.com
Timothy Q. Karcher     tkarcher@proskauer.com
Taejin Kim     tae.kim@srz.com
Edward M King     tking@fbtlaw.com, lsugg@fbtlaw.com;tking@ecf.inforuptcy.com
Lawrence Joel Kotler     ljkotler@duanemorris.com
Jerrold Scott Kulback     jkulback@archerlaw.com
Donald D Levenhagen     dlevenhagen@landmanbeatty.com
Jeff J. Marwil     jmarwil@proskauer.com, npetrov@proskauer.com;pyoung@proskauer.com;jwebb@proskauer.com
Michael K. McCrory     mmccrory@btlaw.com, bankruptcyindy@btlaw.com
Ronald J. Moore     Ronald.Moore@usdoj.gov
Hal F Morris     hal.morris@oag.texas.gov
Kevin Alonzo Morrissey     kmorrissey@lewis-kappes.com, JMcAlpin@lewis-kappes.com;leckert@lewis-kappes.com;KTinsley@lewis-kappes.com
Whitney L Mosby     wmosby@bgdlegal.com, floyd@bgdlegal.com
C Daniel Motsinger     cmotsinger@kdlegal.com, cmotsinger@kdlegal.com;crbpgpleadings@kdlegal.com;lsmalley@kdlegal.com
Lee Duck Moylan     lmoylan@klehr.com
Alissa M. Nann     anann@foley.com
Jack A Raisner     jar@outtengolden.com
Jonathan Hjalmer Reischl     jonathan.reischl@cfpb.gov
James E Rossow     jim@rubin-levin.net, ATTY_JER@trustesolutions.com;robin@rubin-levin.net;lisa@rubin-levin.net
Rene Sara Roupinian     rsr@outtengolden.com, jxh@outtengolden.com;kdeleon@outtengolden.com;rmasubuchi@outtengolden.com;rfisher@outtengolden.com;gl@outtengolden.com
Craig Damon Rust     craig.rust@doj.ca.gov, Kristine.orr@doj.ca.gov
Joseph Michael Sanders     jsanders@atg.state.il.us
Thomas C Scherer     tscherer@bgdlegal.com, rjenkins@bgdlegal.com
Lauren C. Sorrell     lsorrell@kdlegal.com
Jonathan David Sundheimer     jsundheimer@btlaw.com
Meredith R. Theisen     mtheisen@rubin-levin.net, dwright@rubin-levin.net;mcruser@rubin-levin.net
Jessica L Titler     jt@chimicles.com
Ronald M. Tucker     rtucker@simon.com, cmartin@simon.com,bankruptcy@simon.com
U.S. Trustee     ustpregion10.in.ecf@usdoj.gov
Sally E Veghte     sveghte@klehr.com
Michael Benton Willey     michael.willey@ag.tn.gov

   I further certify that on October 3, 2016, a copy of the foregoing *Trustee's Objection to Motion of Commonwealth of Massachusetts and State of New Mexico for Determination that the Automatic Stay Provision Does Not Apply to the States' Actions Against the Debtor* was mailed by first-class U.S. Mail, postage prepaid, and properly address to the following:

Eboney Cobb
Perdue Brandon Fielder Collins Mott LLP
500 E Border Street Suite 640
Arlington, TX 76010

Alan M Grochal
100 East Pratt Street 26th Floor
Baltimore, MD 21202

Paul Weiser Esq.
Bachalter Nemer
16435 North Scottsdale Road, Suite 440
Scottsdale, AZ 85254-175

Elizabeth Weller
Linebarger Goggan Blair & Sampson, LLP
2777 N. Stemmons Freeway
Suite 1000
Dallas, TX 75207

*/s/ John C. Hoard*
John C. Hoard