**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANAPOLIS DIVISION**

IN RE:

ITT EDUCATIONAL SERVICES, INC. et al.[1]                Chapter 7

                    Debtors                Case No. 16-07207-JMC-7A

**STUDENT CLAIMANTS' MOTION TO APPROVE A DISTRIBUTION PLAN,
INCLUDING AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND STUDENT
CLAIMANTS' INCENTIVE AWARDS**

Student Claimants Jorge Villalba, James Eric Brewer, Joshua Cahill, Juan Hincapie, and Cheryl

House ("Student Claimants" or "Class Representatives"), on behalf of themselves and all other

similarly situated ("Class Members" or "Student Class" or "the Class") respectfully submit this

Motion, pursuant to Federal Rules of Civil Procedure ("FRCP") 23(a) and (b) (2) and Federal

Rules of Bankruptcy Procedure ("FRBP") 9014 applying FRBP 7023, seeking approval for a

plan to distribute Common Funds to student Class Members, award attorneys' fees and expenses

to The Project on Predatory Student Lending ("the Project"), and award Student Claimant

incentive awards (all together, "Distribution Plan").

**JURISDICTION**

1.  The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.  This is a core proceeding within the meaning of 28 U.S.C. §157(b) (2).

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The debtors in these cases, along with the last four digits of their respective federal tax identification numbers are
ITT Educational Services, Inc. [1311]; ESI Service Corp. [2117]; and Daniel Webster College, Inc. [5980].

1

4. The basis for relief requested herein are the Federal Rules of Bankruptcy Procedure 7023 and the Court's Final Approval Order of the Settlement [Doc No. 3079] (the "Final Approval Order").

## I.    PROCEDURAL HISTORY AND BACKGROUND

5. On January 3, 2017, the Student Claimants, on behalf of themselves and all other similarly situated, filed a Class Action Adversary Complaint in the Bankruptcy Court against the Debtors (ITT and Daniel Webster College students are collectively referred to as "ITT" students). On December 18, 2017, the Student Claimants and the Trustee entered into the Settlement Agreement, and on January 3, 2018, the Trustee filed with the court a Motion for Authority to Enter into Settlement of Student Class Action [Doc. No. 2288].

6. On January 25, 2018, the Court entered its Preliminary Approval Order (i) certifying this matter as a class action pursuant to FRCP 23(a) and (b) (2) and under FRBP 7023, which the Court deemed applicable pursuant to FRBP 9014, comprised of students who attended educational programs offered by the Debtors between January 1, 2006 and the date of the petition commencing this Chapter 7 proceeding (the "Student Class" and/or "Class Members") and (ii) preliminarily approving the proposed Settlement Agreement between the parties. The Settlement Agreement reflects a comprehensive agreement with respect to former students including (i) the release and discharge of amounts owed by the students to the Debtors, their affiliates and their assignees, (ii) return of sums paid after the petition date and (iii) the allowance of a class general unsecured claims, each in the amount of $1,500,000,000, in each of the debtors' proceedings. This amount may be reduced dollar-for-dollar by the amount of any federal student loan discharges received by the Student Class by the Department of Education, but shall not be reduced below the amount of $1,099,896,000.

7. The Preliminary Approval Order provided that the Trustee would send by first class mail a notice (the "Student Notice") in the form approved by the Court to the members of the Settlement Class who had filed individual proofs of claim, former students listed as account debtors on the accounts placed for servicing or collection with any and all credit agencies for collection and who have made payments on account of such accounts since the petition date), and all parties who requested they receive notice in this case. The Preliminary Approval Order also directed the Trustee to post a copy of Student Notice on the Rust Omni website for the bankruptcy cases and the Debtors' website. The Notice distributed by the Trustee stated that: (a) students should not make payments on their loans to the Debtors, (b) students were entitled to object to the proposed Settlement Agreement by submitting papers in opposition to the Settlement Motion [Doc No. 2290] on or before April 24, 2018; and (c) students were entitled to opt out of the Student Class on or before March 1, 2018. The Court upheld the Trustee's Notice as sufficient and adequate.

8. In the Final Approval Order [Doc No. 3079] issued on November 20, 2018 ("Final Approval Order"), and made final in March 2019, the Court approved the above-described Settlement Agreement.

9. The Court stated in the Final Approval Order that "Class Representatives shall promptly file a proposed division of any… distribution upon notification from the Trustee of the likely amounts of funds to be paid on account of the Proofs of Claim." [Doc. No. 3079 ¶7].

10. On September 16, 2021, counsel for the Department of Education, in writing to both Student Claimants' counsel and the Trustee, reported that the Department of Education has so far discharged approximately $442,000,000 in ITT-related loans for Class Members, which per

the Settlement Agreement, reduces the Student Class's unsecured claim in each of the debtors' proceedings to the amount of $1,099,896,000.

11. On October 14, 2021, the Trustee filed the Trustee's Motion for Authority to Make Interim Distributions to Holders of Allowed Priority Claims and Allowed Unsecured Claims ("Trustee's Motion for Interim Distributions") [ Doc. No. 4505, Doc. No. 94 DWC Estate]. This motion was approved by the court. [Doc. No. 98, DWC Estate].

12. The Trustee's Motion for Interim Distributions reported a distribution amount to the Student Class of $8,421,642.84 ("First Distribution").

13. The Trustee has also indicated to Student Class counsel that she hopes to make additional distributions in the latter part of 2022, or 2023, and that the Student Class will receive a significant portion of any future distributions as it holds the largest allowed unsecured claim in all three cases.

14. On October 25, 2021, Student Claimants filed Student Claimants' Motion to Retain a Claims Administrator and Hold First Distribution Funds [ Doc. No. 4509] seeking, among other things, the authority to retain American Legal Claims Services ("ALCS"). Student Claimants' Motion to Retain a Claims Administrator and Hold First Distribution Funds was approved in part. [ Doc. No. 4519]. The Order stated that, "Student Claimants are hereby authorized to retain American Legal Claim Services LLC ("ALCS") as claims administrator in accordance with the Proposed ALCS Agreement for the purpose of (1) initially holding, until a later date, any initial distribution ("First Distribution") by the Chapter 7 Trustee from the Daniel Webster College, Inc. estate ("DWC Estate"); and (2) upon receipt of any subsequent, more substantial distributions from the ESI and/or ITT estates ("Subsequent Distributions"), to execute the notices and distributions to Student Class Members in

accordance with a distribution plan approved by the Court." In addition, the Order stated, "Students Claimants shall file and serve a motion for approval of their proposed distribution plan in accordance with the Order Establishing Certain Notice, Case Management and Administrative Procedures and Approve Proposed Form 309D (Docket No. 220) (the "Case Management Order") so that such motion and proposed distribution plan can be heard at the omnibus hearing on February 16, 2022 at 1:30 p.m. prevailing Eastern time. Notwithstanding anything to the contrary in the Case Management Order, service of such motion and proposed distribution plan shall be given to the same parties that received service of the Motion."

15. Per the Court's Order granting Student Claimants' Motion to Retain a Claims Administrator and Hold First Distribution Funds, Student Claimants have retained ALCS under the form of contract attached to the October 25, 2021 motion (the "ALCS Contract").

16. ALCS received the First Distribution on December 7, 2021, which has been deposited into a Qualified Settlement Fund ("QSF").

17. The First Distribution and any and all other distributions made by the Trustee constitute the funds from which the Distribution Plan will be effectuated (the "Common Fund").

## II.  DISTRIBUTION PLAN

### A.  Distribution of Common Fund to Class Members

18. Student Claimants submit the following Distribution Plan to achieve the goal of distributing the Common Fund in a manner that is thoughtful and fair, but also the least burdensome on Class Members. The Class Members have already suffered profound harm, and Student Claimants counsel seeks to make this process as easy and fair as possible for them.

i. Amount to Each Class Member

19. After consulting with class action experts and considering how to maximize fairness and minimize burden, Student Class counsel, in consultation with Class Claimants, determined the most appropriate approach is to divide the Common Fund to reflect, as best possible, the relative harm that each Class Member suffered because of ITT. The Class Claimants believe that this harm can best be measured by the number of class credits earned and attempted by each member of the Class.

20. This is the fairest way of assessing harm because it measures how long and how deeply each Class Member was associated with a school that failed its students. This is also the least burdensome method on Class Members because Student Class counsel already has access to the class credit information, and Class Members will not be required to provide any more information or documentation in order to receive their distribution.

21. The Trustee has provided Student Class counsel with several excel files containing Class Member contact information and attendance records. The data that was provided to Student Class counsel by the Trustee includes information for each Class Member reflecting the amount of credits each student attempted to complete and amount of credits completed.

22. Student Class counsel has provided the excel files to ALCS. After reviewing and sorting the files, ALCS has determined that there are currently 449,201[2] unique identification numbers that correspond to individual Class Members.

---

[2] As more fully described in paragraph 36, to the extent that other Class Members emerge after the First Distribution, Student Class counsel, working with ALCS, will make efforts to adjust subsequent distributions in include those Class Members.

23. The amount that each Class Member will receive will be a percentage of the Common Fund, net of (i) the claims administrator fees and expenses payable under the ALCS Contract in connection with the distribution of the Common Fund and (ii) any attorneys' fees and expenses payable to the Project on Predatory Student Lending and any Student Claimant incentive awards, as each are described below.

24. The computation for determining the percentage of the Common Fund distributable to each Class Member is as follows:

- Each Class Member will receive a portion of the Common Fund available for distribution based on the number of credits they earned and the credits they attempted to earn but did not complete divided by the total credits earned and attempted by all members of the Class.

- The earned credits will be weighted at three (3) times the attempted credits, because withdrawal from a course or courses before credit was earned may have mitigated some of the harm because the student may have not been charged for the course or received a refund.

- If a Class Member's total amount due is less than $10.00 from the First Distribution, that amount will be set aside until a further distribution is made. The Student Claimants set that threshold because ALCS, and other experts with whom the Student Class counsel has consulted, have advised that a significant percentage of checks in de minimis amounts will simply not be cashed by the recipient. The Student Claimants propose that if the total amount to due to any Class Member, after giving effect to subsequent distributions, is $10.00 or greater,

any Class Member who did not receive a distribution from the First Distribution

will have that amount added to any subsequent distributions.

- If a Class Member's total amount due from all distributions does not equal or

    exceed $10.00, they will not receive a distribution.

27. ALCS has calculated an initial distribution of $ 7,310,428.44 (which reflect the amounts

received from the Trustee less (i) amounts payable under the ALCS Contract and (ii) the

attorneys' fees and expenses, and incentive payments sought below, to the extent permitted by

this Court). Under the proposed Distribution Plan:

        (i)      Eighty-nine percent (89%), by dollar amount, of the initial

                distribution (or $ 6,503,990.70) will be distributed to identified

                members of the Student Class whose payment amount will

                equal or exceed $10.00.

        (ii)     Forty-nine percent (49%), by number, of the members of the

                identified Student Class will not receive a distribution because

                the payment amount would be less than $10.00. This would

                mean that approximately $806,000 of the $7,310,428.44 will be

                reserved for a later distribution.

25. In order to make a distribution, ALCS will use the skip-trace methods described more fully

below to verify addresses that have been provided by the Trustee. As described below, Class

Members will be given the option to receive their distribution payment either via a mailed

check or through electronic means.

26. If a Class Member does not respond with any updated contact address information, but

ALCS has what appears to be a valid address for that Class Member, the Class Member will

nonetheless receive a distribution check. Class Members will have ninety days (90) to cash any distribution check.

27. Class Members who do not cash or claim their distribution from the First Distribution will have any amounts payable rolled over to the second distribution. However, if such Class Member does not cash or claim their distribution from the second distribution, all amounts otherwise payable to such Class Member will revert to the Common Fund and such Class Member will not receive any subsequent distributions.

ii. Notice of Distribution Plan and Tracing of Class Members

28. Student Claimants believe that the Trustee has provided them with sufficient information for ALCS to give effective notice of any approved Distribution Plan. The excel files provided by the Trustee include addresses and personal email addresses and the notice will include a request for Class Members to update and confirm their contact information.

29. The information provided by the Trustee was last updated in September 2016, over 5 years ago, when ITT closed its doors. Because the Class includes former ITT students who attended ITT as long ago as 2006, much of the information may be stale.

30. In light of the age of the information, ALCS will use the technological tools available to either verify the email addresses on file or obtain the current email addresses for Class Members.

31. ALCS will take the following steps to provide email notice of the Distribution Plan and request for contact updates to Class Members:

    i.  Check the email addresses for syntax.

    ii.  Confirm that the domain name the email address is hosted on exists, is registered, and working properly.

9

      iii.   Analyze the emails so as to check for spam traps, complainers, etc. that will negatively impact deliverability.

      iv.   Deploy the technical process of pinging the email address and then awaiting server-response to confirm the email address exists on the server and is active.

32. If ALCS is not able to verify and send an email notice to a Class Member, but does have a valid physical mailing address, ALCS will mail a notice through the U.S. postal service.

33. In addition to mailed and e-mailed notice, ALCS will provide a website that will allow Class Members to view court documents and ask questions. ALCS will also set up a call center that provides a toll-free line for Class Members to call with questions and obtain information.

34. The emailed and/or postal notice to each Class Member will contain the following information:

- A description of the Distribution Plan;

- The current address on file for the Class Member;

- The credits earned and attempted on file for the Class Member;

- Information on how to change the address;

- Information on how to obtain an electronic payment;

- Information about a dedicated webpage for the distribution; and

- The toll-free line for Class Members to call with questions.

35. After ALCS has completed its verification process, it will mail checks or make electronic payments to all Class Members whose address it has been able to verify.

36. The Student Claimants and ALCS anticipate that certain Class Members may only surface after the Initial Distribution has been made. This could happen for several reasons, including

10

because the excel information obtained by the Trustee from ITT was incomplete or because Class Members are not traceable from the available information. As noted above, the distribution amount has been calculated based on all the identified Class Members from the files provided by the Trustee.  As is the case with Class Members with initial distribution amounts of less than $10.00, ALCS will reserve amounts payable to late-surfacing Class Members who are reflected on the Trustee's excel files until the second distribution. ALCS will also provide a procedure on its website for any former ITT student who claims that they are a Class Member (but who are not reflected on the Trustee's excel files) to provide reasonable evidence for that claim; if ALCS determines in consultation with the counsel to the Student Class that the claim is adequately supported, the subsequent distributions will be recalculated to reflect such claim. But any distribution otherwise payable to a Class Member who does not surface until after the second distribution will revert to the Common Fund and such Class Member will not receive any further distributions.

37. In addition, if a Class Member disputes the credits earned or attempted on file, a Class Member will have the opportunity to provide reasonable evidence for that claim; if ALCS determines in consultation with the counsel to the Student Class that the claim is adequately supported, the distributions will be recalculated to reflect such claim.

38. Once all distributions have been made, if there is an amount that is too small to merit another distribution, taking into account costs of distribution, Student Claimants will submit to the Court a motion to approve a Cy Pres distribution.

### B.  Student Claimants' Award

39. Jorge Villalba, James Eric Brewer, Joshua Cahill, Juan Hincapie, and Cheryl House, the named plaintiffs for the Student Class, played an indispensable role in this litigation. They

chose to step up and fight back against ITT on behalf of their fellow students, taking time out of their own schedules to right wrongs committed by an institution that betrayed their trust. They made a commitment to represent former ITT students when they had no idea if or what the outcome of the litigation would be. Thanks to the contributions of these five Student Claimants, the class procured significant injunctive relief—providing immediate relief to members of the class—and a settlement allowing $1,500,000,000 in unsecured claims against each debtor, the largest of any unsecured creditor class in this Bankruptcy proceeding.

40. Student Claimants request incentive awards of $10,000 per Student Claimant on the basis of their contributions to the Class and participation in the litigation.

41. The Seventh Circuit recognizes that "[a] named plaintiff is an essential ingredient of any class action." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Courts evaluate the contributions of named plaintiffs to the class to determine the appropriateness of a proposed incentive award. *Id.* At 1016-17; *see also Camp Drug Store, Inc. v. Cochran Wholesale Pharmaceutical, Inc.*, 897 F.3d 825, 834 (7th Cir. 2018). In the Seventh Circuit courts have broad discretion to approve proposed class representative incentive awards. *Camp Drug Store*, 897 F.3d at 834-35. By way of example only, the District Court in *Miner et al. v. ITT Educational Services Inc.* approved incentive awards of $10,000 per Class Representative as part of the settlement agreement entered into between the ITT bankruptcy Trustee and the plaintiff class. *See* Miner *et al. v. ITT Educational Services Inc*, 3:16-cv-04827-VC [Doc. 79].

42. The Class Claimants in this matter participated extensively in this litigation over the course of several years, providing written testimony, meeting many times with Student Class counsel, providing significant assistance with the Complaint, and providing crucial input on

the Settlement Agreement and the Distribution Plan. In addition, Class Claimants were

regularly consulted on other matters in the bankruptcy that affected the Student Class,

including the Trustee's settlement with the CFPB, and the Student Cu Connect (CUSO) and

PEAKS entities. Consistent with Seventh Circuit precedent and the practice of the District of

Southern Indiana, Student Claimants request incentive awards of $10,000 per Student

Claimant on the basis of their contributions to the Class and participation in the litigation.

### C. Request for Attorneys' Fees and Expenses for the Project on Predatory Student Lending

43. Counsel at the Project on Predatory Student Lending request attorneys' fees in the amount of

five percent (5%) of the total Common Fund.

44.  The Project submits that the award of attorneys' fees from the Common Fund is appropriate

under Supreme Court and Seventh Circuit precedent. Supreme Court precedent is clear: "a

litigant or a lawyer who recovers a common fund for the benefit of persons other than

himself or his client is entitled to a reasonable attorney's fee from the fund as a whole" as a

means of "spreading fees proportionately among those benefited by the suit." *Boeing Co. v.

Van Gemert*, 444 U.S. 472, 478 (1980) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375

(1970); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939)). Under Seventh Circuit

precedent, the common fund doctrine controls absent an express statutory fee-shifting

provision or attorney fee provision in the approved settlement agreement. *Florin v.

Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994); *In re Southwest Airlines

Voucher Litigation*, 898 F.3d 740, 745-46 (7th Cir. 2018) ("The common-fund doctrine

applies as a default rule unless the parties draft their settlement agreement to depart from

it.").

45. In the Seven Circuit, "when a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998). In determining that percentage, the Seventh Circuit directs that "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time. *In re Synthroid Marketing Litigation*., 264 F.3d 712, 718 (7th Cir. 2001). If there was no previous negotiation between the parties, "the court must set a fee by approximating the terms that would have been agreed to *ex ante*, had negotiations occurred." *Synthroid.,* 264 F.3d 712, 719 (7th Cir. 2001). The Seventh Circuit has said that, "the typical contingent fee is between 33 and 40 percent…[with] some courts [suggesting] 25 percent as a benchmark figure for a contingent-fee award in a class action." *Gaskill,* 160 F.3d 361, 362-362.

46. In addition, the Seventh Circuit, at times, employs a "sliding scale" approach to attorney's fees. *See In re Synthroid Marketing Litigation*., 325 F.3d 974, 978 (7th Cir. 2003) ("For example, the (hypothetical) *ex ante* contract with consumer class counsel might grant 35% of the first $20 million, 25% of the next $20 million, and 10% of the residue.").

47. Student Claimants' are requesting a 5% fee award from the Common Fund. This would result in approximately $425,000 from the First Distribution, with subsequent distributions resulting in additional fees. Here, the Project's request for 5% award falls well below any typical request and, even under any sliding scale model, is reasonable.

48. The attorneys and paralegal staff at Project on Predatory Student Lending have, collectively, expended significant resources in representing the Student Class.  In litigating this matter, attorneys and paralegals at the Project have:

- Conducted a comprehensive investigation of ITT, including reviewing thousands of ITT student complaints, interviewing former ITT students and employees, and obtaining employee affidavits;

- Drafted and submitted a multiple-count Adversary Proceeding complaint, with over a thousand pages of exhibits that documented ITT's fraud and wrongdoing;

- Fielded inquiries from hundreds of former ITT students, including Class Members;

- Provided important case updates to former ITT students, including Class Members, via email and our website;

- Negotiated a Settlement Agreement between Trustee and the Student Class which resulted in an excellent outcome for Class Members which included injunctive relief, return of monies to students, and a $1.5 billion allowed Proof of Claims in each of the Debtors' estates;

- Filed several motions before the Court, including motions for Rule 2004 examinations of the Department of Education and motions regarding Protective Orders;

- Worked with the Trustee, and other creditors, to ensure that the Student Class benefited from settlements with the Student CU Connect (CUSO) and PEAKS entities, which resulted in the discharge of all remaining loans with those entities; and

- Prepared for and appeared at hearings related to this matter.

The Project conservatively estimates that it has devoted at least 2300 hours of legal services in the representation of the Class in this Chapter 7 proceeding.

49. As a result of the Project's representation of the Student Class in this proceeding, hundreds of thousands of former ITT students obtained an excellent outcome, including substantial injunctive relief and the upcoming distributions from the bankruptcy estates. Without the Project on Predatory Student Lending's involvement in this bankruptcy, former ITT students would not have received the outcome that was obtained, and may have never been represented in this bankruptcy at all.

50. The Project on Predatory Student Lending represents the interest of hundreds of thousands students who have been defrauded by ITT, both in this matter and in advocacy before the Department of Education.

51. As the Court is aware from prior hearings on the modification of the protective orders in this bankruptcy, the Project has prepared a 172-page report, with thousands of pages of related exhibits, documenting ITT's wrongdoing and fraud, and harm it caused its former students. That report has been submitted to the Trustee for her review in accordance with the Protective Orders. When the report is complete, it will be submitted to the Department of Education together with a request that the Department discharge the remaining federal student debts of all former ITT students.

52. To be clear, the Project is only seeking a fee award for its legal work in these bankruptcy proceedings. But the report to the Department of Education illustrates how a fee award for the Project's bankruptcy services will further its mission of helping all student borrowers who have been harmed by postsecondary institutions like ITT. The Project is supported entirely by grants and donations. It contributes a portion of its grants to cover overhead at, but does not receive direct financial support from, Harvard Law School. An award of

attorneys' fees will enable the Project to continue its work into the future, in furtherance of its mission.

53. In addition to attorneys' fees, the Project seeks the reimbursement of expenses from the Common Fund associated with litigating this matter. Total litigation expenses are $15,982.40. These expenses are detailed in Exhibit A.

## NOTICE

54.      Pursuant to the Case Management Procedures, a copy of this Motion and Exhibits will be served on the following (as defined in the Case Management Procedures): (a) the Core Group; (b) the Request for Notice List; (c) the Appearance List; and (d) Affected Entities.

          **NOTICE IS GIVEN**, that pursuant to the Case Management Procedures, any objection to this Motion must be in writing and filed with the Bankruptcy Clerk by no later than February 9, 2022, at 4:00 pm. (prevailing Eastern time). Parties not represented by an attorney may deliver any written objection to this Motion as follows: (a) by U.S. mail, courier, overnight/express mail at Clerk, United States Bankruptcy Court, Re:  *In re ITT Educational Services, Inc., et al.*, 116 U.S. Courthouse, 46 East Ohio Street, Indianapolis, IN 46024; or (b) by publicly accessible drop box available at the Indianapolis Division located at the New York Street and Pennsylvania Street entrance. The objecting party must also serve a copy of the written objection on the Student Claimants counsel:

          Eileen M. Connor
          Victoria Roytenberg
          John Sigel
          **LEGAL SERVICES**

**CENTER OF HARVARD LAW SCHOOL**
122 Boylston Street
Jamaica Plain, MA 02130

and -

Catherine Steege
Melissa Root
**JENNER & BLOCK**
353 N. Clark Street
Chicago, IL 60654

13.      If an objection is NOT timely filed, the requested relief may be granted without a

hearing.  **NOTICE IS FURTHER GIVEN**, that in the event that an objection to this motion is

timely filed, a hearing on this motion and such objection will be conducted on February 16,

2022, at 1:30 pm (prevailing Eastern time), in Room 325 of the United States Courthouse, 46

East Ohio Street, Indianapolis, IN 46204.  Interested parties may also participate at the hearing

by conference call by calling 1-888-273-3658, passcode 6349352#.

WHEREFORE, the Student Claimants respectfully request that this Court GRANT the

Motion and enter a final order granting the relief requested herein and any such other relief as

may be just and proper.

Dated: January 20, 2022

Respectfully submitted,

/s/ Victoria Roytenberg
Victoria Roytenberg (pro hac vice)
Eileen M. Connor (pro hac vice)
John D. Sigel (pro hac vice)
**LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL**
122 Boylston Street
Jamaica Plain, MA 02130
Phone: (617) 522-3003
Fax: (617) 522-0715

- and –

Catherine Steege
Melissa Root
**JENNER & BLOCK**
353 N. Clark Street Chicago, IL 60654
Phone: (312) 222-9350
Fax: (312) 840-7352

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2022, a copy of the foregoing Student Claimants' Motion to Approve a Distribution Plan, Including an Award of Attorneys' Fees and Expenses, and Student Claimants' Incentive Awards was filed electronically. Pursuant to Section IV.C.3(a) of the Case Management Procedures, notice of this filing was sent to all parties registered to receive filings in this case through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system, in compliance with Section IV. C.6 of the Case Management Procedures.

I further certify that on January 20, 2022, a copy of the foregoing Student Claimants' Motion to Approve a Distribution Plan, Including an Award of Attorneys' Fees and Expenses, and Student Claimants' Incentive Awards was mailed via U.S. First-Class Mail and properly addressed, to the following:

311 New Rodgers Associates LLC
c/o Kay Dee Baird
Krieg DeVault LLP
One Indiana Square
Suite 2800
Indianapolis, IN 46204

Nancy Adkins
361 Dailey Rd
Crown City, OH 45623

BGBC Partners, LLP
300 N. Meridian Street, Suite 1100
Indianapolis, IN 46204

Rebekah Hatfield
10 Tulip St.
Branchland, WV 25506

Chris W Halling
for Solar Drive Business LLC
23586 Calabasas Rd, Ste 200
Calabasas, CA 91302

Regina Hallam
P.O. Box 472
West Hamlin, WV 25571

Larry Hafertepe
8321 Pippin Rd
Cincinnati, OH 45239

John P Dillman
Attorney in Charge for Taxing Authorities
PO Box 3064
Houston, TX 77253

Direct Energy Business, LLC
c/o Joseph E. Bain
Edison, McDowell & Hetherington, LLP
1001 Fannin #2700
Houston, TX 77002

City Wide Maintenance of Central Maryland
1818 Pot Spring Rd, Ste 24
Lutherville, MD 21093

Rubin & Levin, P.C.
135 N Pennsylvania St Ste 1400
Indianapolis, IN 46204

William Cavanaugh
P.O. Box 40125
Tucson, AZ 85717

Paul Weiser Esq.
Bachalter Nemer
16435 North Scottsdale Road, Suite 440
Scottsdale, AZ 85254-1754

Elizabeth Weller
Linebarger Goggan Blair & Sampson, LLP
2777 N. Stemmons Freeway
Suite 1000

T. Todd Egland
Belden Blaine Raytis, LLP
P.O. Box 9129
Bakersfield, CA 93389-9129

Earle Browne Tower LLP
c/o Krieg DeVault LLP
C. Daniel Motsinger
One Indiana Square
Suite 2800
Indianapolis, IN 46204

Recovery Management Systems Corporation
for Synchrony Bank
25 SE 2nd Ave, Ste 1120
Miami, FL 33131-1605

Gustav Skurdal
720 South 20 Street
Mount Vernon, IL 62864

Kesha L Tanabe
1515 Canadian Pacific Plaza
120 South Sixth Street
Minneapolis, MN 55402

Techno Training, Inc
328 Office Square Lane
Ste. 202
Virginia Beach, VA 23462-3648

Edmund J. Towle
11111 Santa Monica Boulevard - Suite 330
Los Angeles, CA 90025

Kristen Trease
3230 S Santa Rita Way
Chandler, AZ 85286

United States of America
c/o Department of Justice
1100 L Street, NW
Washington, DC 20005

Dallas, TX 75207

TN Dept of Revenue
c/o TN Atty General, Bankruptcy Div
PO Box 20207
Nashville, TN 37202-0207

Tammy Jones, Pro Se
Oklahoma County Treasurer
320 Robert S. Kerr
Room 307
Oklahoma City, OK 73102

Leland Dekay
69 Thomas Court
Centerville, MI 49091

Ezra N. Goldman
EZRA N. GOLDMAN, P.C.
24725 West 12 Mile Road #110
Southfield, MI 48034

Kristen Trease
3230 S Santa Rita Way
Chandler, AZ 85286

My College Guide
5500 Military Trail
Suite 22-264
Jupiter, FL 33458

Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 K St., NW, Suite 340
Washington, DC 20005

Mulvey Law LLC
133 W. Market St. #274
Indianapolis, IN 46204

Carly Kessler
Oppenheim & Zebrak, LLP
4530 Wisconsin Avenue, 5th floor
Washington, DC 20016

James Stark
10760 Whitten Ridge Rd.
Glenwood, WV 25520

Shervon Suttle
4629 Heatherwind Dr.
Ft. Wayne, IN 46815

Carl O Sandin
for Clear Creek Independent School Distr
1235 North Loop West, Ste 600
Houston, TX 77008

Kevin Schwin
Law Office of Kevin Schwin
1220 E. Olive Avenue
Fresno, CA 93728

Polstar Commercial Cleaning Inc
5124 Pontiac Trl
Ann Arbor, MI 48105

Rachel Obaldo
Office of the Texas Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

Gertrude C. Nelson
2503 Panagard Drive, #204
Houston, TX 77082

Northwest Natural Gas Company
220 NW 2nd Avenue
Portland, OR 97209

Joseph A Malfitano
for Tiger Capital Group LLC
747 Third Ave, 2nd Floor
New York, NY 10017

Michigan Dept of Licensing & Regulatory
Affairs, B
PO Box 30217
Lansing, MI 48909

Jordan A Lavinsky, Esq
for Market-Turk Company
425 Market St, 26th Floor
San Francisco, CA 94105

Todd Lehman
3700 Deer Lake Dr
Evansville, IN 47720

Matthew Howard
3906 South Pilgrim Street
Seattle, WA 98118

Charles Joecks
5005 W. College Ave #101
Greendale, WI 53129

Jeff J. Marwil
Proskauer Rose, LLP
70 West Madison
Suite 3800
Chicago, IL 60602

Judith Chaney
179 Township Road - 1431
South Point, OH 45680

Allison Hopkins
Ogletree Deakins Nash Smoak & Stewart
111 Monument Circle
Suite 4600
Indianapolis, IN 46204

Stephanie D Pollay
3740 Thompson Rd
Collegeville, PA 19426

David C. Alford
P.O. Box 58
Waco, TX 76703

Steven Blahut
8229 Woodpath Lane
Powell, TN 37849

Providence Melrose Vista, LLC
c/o C. Daniel Motsinger
Krieg DeVault LLP
One Indiana Square

Suite 2800
Indianapolis, IN 46204

RREF II Walnut Creek, LLC
c/o Jeffrey A. Hokanson
Frost Brown Todd LLC
201 North Illinois Street, Suite 1900
Indianapolis, IN 46204

Brian Hauck
Jenner & Block LLP
633 West 5th Street
Suite 3500
Los Angeles, CA 90071

Phil Bystry
3022 E. Palmyra Ave
Orange, CA 92869

Maryland Higher Education Commission
6 North Liberty Street
10th Floor
Baltimore, MD 21201

Joe Cancelliere
30 Lindsay
Billerica, MA 01821

Jared Mattern
7013 17th Place SE
Lake Stevens, WA 98258

Tomas Canizales
606 N Central Ave
Cameron TX 76520

Joseph Mazzara
9473 NW 5th Street
Coral Springs, FL 33071

Central Indiana Maintenance, Inc., d/b/a City
Wide
5155 N. Shadeland Avenue, Suite 101
Indianapolis, IN 46226

Jake Mills
6445 Hermosa Ave
Yucca Valley, CA 92284

Expressive Communication Consulting &
Training
4344 Madison St NE
Minneapolis, MN 55421

Don Monteaux
DBA Don Monteaux Photography
203 43rd St
Virginia Beach, VA 23451

John Hicks
8250 Spicewood Ct
Mechanicsville, VA 23111

Raul Gonzalez
1700 Seward Rd
Joliet, IL 60431

Kim Denise Ingram
1060 Kennesaw Due W Rd, NW
Kennesaw, GA 30152

  /s/ Victoria Roytenberg
Victoria Roytenberg

**Exhibit A**

[Expenses]

*Villalba v. ITT Educational Services Inc.* (*In re ITT Educational Services Inc.*), Adv. Case No.
17-50003 (Bankr. S.D. Ind. Jan. 3, 2017)
Case Expenses

| DATE | AMOUNT | CATEGORY |
|---|---|---|
| 8/10/2018 | $100.00 | Court & Bar Admissions |
| 12/22/2016 | $18.17 | Fedex & Mail |
| 1/10/2017 | $144.48 | Fedex & Mail |
| 1/19/2017 | $14.31 | Fedex & Mail |
| 1/26/2017 | $10.76 | Fedex & Mail |
| 1/26/2017 | $10.76 | Fedex & Mail |
| 6/8/2018 | $9.24 | FedEx & Mail |
| 6/8/2018 | $9.33 | FedEx & Mail |
| 6/8/2018 | $10.75 | FedEx & Mail |
| 6/8/2018 | $11.36 | FedEx & Mail |
| 6/8/2018 | $11.36 | FedEx & Mail |
| 6/8/2018 | $11.36 | FedEx & Mail |
| 6/8/2018 | $11.36 | FedEx & Mail |
| 6/8/2018 | $11.36 | FedEx & Mail |
| 6/8/2018 | $11.36 | FedEx & Mail |
| 6/8/2018 | $11.36 | FedEx & Mail |
| 6/8/2018 | $12.30 | FedEx & Mail |
| 6/8/2018 | $12.30 | FedEx & Mail |
| 6/8/2018 | $12.30 | FedEx & Mail |
| 6/8/2018 | $12.30 | FedEx & Mail |
| 6/8/2018 | $12.87 | FedEx & Mail |
| 6/8/2018 | $12.87 | FedEx & Mail |
| 6/8/2018 | $12.87 | FedEx & Mail |
| 6/8/2018 | $12.87 | FedEx & Mail |
| 6/8/2018 | $13.34 | FedEx & Mail |
| 6/8/2018 | $15.46 | FedEx & Mail |
| 6/8/2018 | $15.46 | FedEx & Mail |
| 6/8/2018 | $15.46 | FedEx & Mail |
| 6/8/2018 | $15.46 | FedEx & Mail |
| 6/8/2018 | $15.46 | FedEx & Mail |
| 6/8/2018 | $16.40 | FedEx & Mail |
| 6/8/2018 | $16.97 | FedEx & Mail |
| 6/8/2018 | $18.38 | FedEx & Mail |
| 6/8/2018 | $18.38 | FedEx & Mail |
| 6/8/2018 | $19.94 | FedEx & Mail |
| 6/8/2018 | $20.16 | FedEx & Mail |
| 6/8/2018 | $20.43 | FedEx & Mail |
| 6/8/2018 | $20.43 | FedEx & Mail |
| 6/21/2018 | $172.90 | FedEx & Mail |
| 7/26/2018 | $12.87 | FedEx & Mail |

*Villalba v. ITT Educational Services Inc.* (*In re ITT Educational Services Inc.*), Adv. Case No. 17-50003 (Bankr. S.D. Ind. Jan. 3, 2017)
Case Expenses

| | | | |
|---|---|---:|---|
| | 7/27/2018 | $15.46 | FedEx & Mail |
| | 7/27/2018 | $7.82 | FedEx & Mail |
| | 7/27/2018 | $11.36 | FedEx & Mail |
| | 7/27/2018 | $11.44 | FedEx & Mail |
| | 8/2/2018 | $6.84 | FedEx & Mail |
| | 10/2/2018 | $24.70 | FedEx & Mail |
| | 12/14/2018 | $27.70 | FedEx & Mail |
| | 1/4/2019 | $31.65 | FedEx & Mail |
| | 5/24/2019 | $21.25 | FedEx & Mail |
| | 6/26/2019 | $35.80 | FedEx & Mail |
| | 8/7/2019 | $19.30 | FedEx & Mail |
| | 8/8/2019 | $22.40 | FedEx & Mail |
| | 10/9/2019 | $22.40 | FedEx & Mail |
| | 10/29/2019 | $22.40 | FedEx & Mail |
| | 11/14/2019 | $43.45 | FedEx & Mail |
| | 11/21/2019 | $106.97 | FedEx & Mail |
| | 12/5/2019 | $51.00 | FedEx & Mail |
| | 4/3/2020 | $43.35 | FedEx & Mail |
| | 5/26/2020 | $25.90 | FedEx & Mail |
| | 6/22/2020 | $21.60 | FedEx & Mail |
| | 11/23/2020 | $4.00 | FedEx & Mail |
| | 2/11/2021 | $22.11 | FedEx & Mail |
| | 8/23/2021 | $57.00 | FedEx & Mail |
| | 9/21/2021 | $7.63 | FedEx & Mail |
| | 10/25/2021 | $138.80 | FedEx & Mail |
| | 12/13/2021 | $100.00 | FedEx & Mail |
| | 12/16/2016 | $100.00 | Filing Fees |
| | 12/16/2016 | $100.00 | Filing Fees |
| | 12/16/2016 | $100.00 | Filing Fees |
| | 12/16/2016 | $100.00 | Filing Fees |
| | 1/3/2017 | $350.00 | Filing Fees |
| | 10/25/2016 | $577.70 | Travel |
| | 10/25/2016 | $315.90 | Travel |
| | 11/2/2016 | $114.23 | Travel |
| | 1/12/2017 | $26.60 | Travel |
| | 1/24/2017 | $2,131.08 | Travel |
| | 1/24/2017 | $589.60 | Travel |
| | 1/24/2017 | $155.84 | Travel |
| | 1/25/2017 | $417.69 | Travel |
| | 1/25/2017 | $139.23 | Travel |
| | 1/25/2017 | $17.00 | Travel |

*Villalba v. ITT Educational Services Inc.* (*In re ITT Educational Services Inc.*), Adv. Case No.
17-50003 (Bankr. S.D. Ind. Jan. 3, 2017)
Case Expenses

| | 1/25/2017 | $4.00 | Travel |
|---|---|---|---|
| | 1/29/2017 | $69.41 | Travel |
| | 1/30/2017 | $48.00 | Travel |
| | 1/30/2017 | $45.72 | Travel |
| | 1/30/2017 | $44.10 | Travel |
| | 1/30/2017 | $16.34 | Travel |
| | 1/30/2017 | $16.10 | Travel |
| | 1/30/2017 | $10.28 | Travel |
| | 1/30/2017 | $7.20 | Travel |
| | 1/30/2017 | $6.50 | Travel |
| | 2/1/2017 | $899.76 | Travel |
| | 2/1/2017 | $336.16 | Travel |
| | 2/8/2017 | $42.35 | Travel |
| | 2/8/2017 | $8.00 | Travel |
| | 2/9/2017 | $380.68 | Travel |
| | 2/9/2017 | $35.75 | Travel |
| | 2/10/2017 | $52.90 | Travel |
| | 2/10/2017 | $40.69 | Travel |
| | 2/10/2017 | $13.51 | Travel |
| | 2/14/2017 | $52.90 | Travel |
| | 3/17/2017 | $62.39 | Travel |
| | 4/5/2017 | $515.60 | Travel |
| | 4/5/2017 | $311.30 | Travel |
| | 4/5/2017 | $31.78 | Travel |
| | 4/6/2017 | $182.20 | Travel |
| | 4/11/2017 | $749.88 | Travel |
| | 5/5/2017 | $275.30 | Travel |
| | 6/1/2017 | $120.41 | Travel |
| | 1/26/2018 | $174.33 | Travel |
| | 1/26/2018 | $660.00 | Travel |
| | 2/1/2018 | $9.40 | Travel |
| | 2/1/2018 | $9.74 | Travel |
| | 2/1/2018 | $25.54 | Travel |
| | 2/1/2018 | $32.79 | Travel |
| | 7/5/2018 | $729.96 | Travel |
| | 7/6/2018 | $773.96 | Travel |
| | 7/10/2018 | $5.67 | Travel |
| | 7/10/2018 | $23.62 | Travel |
| | 7/10/2018 | $205.24 | Travel |
| | 7/10/2018 | $22.95 | Travel |
| | 7/11/2018 | $20.15 | Travel |

*Villalba v. ITT Educational Services Inc.* (*In re ITT Educational Services Inc.*), Adv. Case No. 17-50003 (Bankr. S.D. Ind. Jan. 3, 2017)
Case Expenses

| | | |
|---|---|---|
| 7/11/2018 | $22.57 | Travel |
| 7/11/2018 | $25.71 | Travel |
| 7/11/2018 | $32.00 | Travel |
| 7/11/2018 | $27.59 | Travel |
| 7/11/2018 | $30.86 | Travel |
| 7/11/2018 | $8.00 | Travel |
| 7/11/2018 | $8.00 | Travel |
| 8/8/2018 | $211.78 | Travel |
| 9/25/2018 | $32.30 | Travel |
| 9/25/2018 | $4.64 | Travel |
| 9/26/2018 | $278.78 | Travel |
| 9/26/2018 | $11.64 | Travel |
| 9/26/2018 | $22.66 | Travel |
| 9/26/2018 | $10.85 | Travel |
| 9/26/2018 | $18.17 | Travel |
| 9/26/2018 | $9.00 | Travel |
| 9/26/2018 | $209.43 | Travel |
| 9/27/2018 | $23.53 | Travel |
| 10/2/2018 | $19.00 | Travel |
| 11/20/2018 | $431.40 | Travel |
| 11/27/2018 | $39.04 | Travel |
| 11/28/2018 | $200.94 | Travel |
| 11/28/2018 | $9.76 | Travel |
| 11/28/2018 | $6.45 | Travel |
| 11/28/2018 | $21.39 | Travel |
| 11/28/2018 | $50.95 | Travel |
| 11/28/2018 | $42.60 | Travel |
| 11/28/2018 | $28.10 | Travel |
| | | |
| Total Travel | $13,394.57 | |
| Total FedEx & Mail | $1,737.83 | |
| Total Filing Fees | $750.00 | |
| Total Court & Bar Admissions | $100.00 | |
| | | |
| TOTAL | $15,982.40 | |

**Exhibit B**
[Proposed Order]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: | |
| ITT EDUCATIONAL SERVICES, INC. et al.[1] | Chapter 7 |
| Debtors | Case No. 16-07207-JMC-7A |

**ORDER GRANTING STUDENT CLAIMANTS' MOTION TO APPROVE A
DISTRIBUTION PLAN, INCLUDING AN AWARD OF ATTORNEYS FEES AND
EXPENSES, AND STUDENT CLAIMANTS' INCENTIVE AWARDS**

Upon the motion[2] (the "Motion") [Doc.    ] of Student Claimants for an order pursuant to

Federal Rules of Bankruptcy Procedure ("FRBP") 9014 applying FRBP 7023, having

jurisdiction over this Motion pursuant to 28 U.S.C. § 1334; it appearing that venue in this Court

is proper pursuant to 28 U.S.C. §§ 1408 and 1409; it appearing that this matter affects the

---

[1] The debtors in these cases, along with the last four digits of their respective federal tax identification numbers are
ITT Educational Services, Inc. [1311]; ESI Service Corp. [2117]; and Daniel Webster College, Inc. [5980].
[2] Capitalized terms used but not otherwise defined herein shall have the meanings used in the Motion.

administration of the debtors' estate; and  having heard the representations of counsel for Student

Claimants at a hearing on February 16, 2022; after due deliberation thereon, it is hereby

ORDERED:

1. The Motion is GRANTED:

2. The Distribution Plan proposed in the Motion is approved and Student Claimants,
   working with American Legal Claims Services, are authorized to commence
   distribution to Class Members under the Distribution Plan;

3. The Student Claimants' request for incentive awards from the Common Fund is
   approved in the amount of $10,000 per Student Claimant;

4. The Student Claimants' request for attorneys' fees for the Project on Predatory
   Student Lending from the Common Fund is approved in the amount of 5% of the total
   Common Fund; and

5. The Student Claimants' request for expenses expended by the Project on Predatory
   Student Lending from the Common Fund is approved in the amount of $15,982.40.